UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TYSON LUCAS,

                        Plaintiff,

                -against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY;
PORT AUTHORITY POLICE DEPARTMENT; Police
Officer WARREN NORMAN, Shield No. 2756; Police
Officer ANTHONY YOUNG; JOHN and JANE DOES 1
through 10, individually and in their official capacities, (the
names John and Jane Doe being fictitious, as the true names
are presently unknown),

                        Defendants.
------------------------------------------------------------------------x

12 CV 3096
(CM)


# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

JAMES M. BEGLEY
Deputy General Counsel
*Attorney for Defendants*
The Port Authority of New York and New
Jersey, Police Officer Warren Norman and
Police Officer Anthony Young

By: Karla Denalli, Esq.
    225 Park Avenue South, 13th Floor
    New York, New York 10003

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF RELEVANT HISTORY AND FACTS ..........................................................1

ARGUMENT ..................................................................................................................................3

        POINT I:     The Attorney Fees Sought Are Excessive And Should Be Reduced In Accordance With The Applicable Legal Standard .....................................3

                A.     Applicable Legal Standard .................................................................3

                B.     The Hours For Which Plaintiff Seeks Compensation are Excessive .............................................................................................4

                        1.     Hours Sought by Attorneys Fett and Wright ........................4

                        2.     Hours Sought by Attorney Harvis ........................................6

                        3.     Other Factors .........................................................................9

        POINT II:    The Fee Requested Should be Reduced Commensurate With Plaintiff's Limited Success ...............................................................10

        CONCLUSION .................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany,*
   522 F.3d 182 (2d Cir. 2008) ............................................................................................. 3, 4

*Barfield v. New York City Health and Hospitals Corp.,*
   537 F.3d 132 (2d Cir. 2008) ........................................................................................... 3, 10

*Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center,*
   652 F.3d 277 (2d Cir. 2011) .................................................................................................. 3

*Blum v. Stenson,*
   465 U.S. 886 (1984) ............................................................................................................... 4

*E.S. v. Katonah-Lewisboro School Dist.,*
   796 F.Supp.2d 421 (S.D.N.Y. 2011) ...................................................................................... 5

*Farbotko v. Clinton County of New York,*
   433 F.3d 204 (2d Cir. 2005) .................................................................................................. 4

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ............................................................................................................. 10

*Grant v. Martinez,*
   973 F.2d 96 (2d Cir. 1992) .................................................................................................. 11

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) .................................................................................................. 4, 10, 11

*Johnson v. Ga. Highway Exp., Inc.,*
   488 F.2d 714 (5th Cir. 1974) ................................................................................................ 4

*Kassim v. City of Schenectady,*
   415 F.3d 246 (2d Cir. 2005) ............................................................................................... 10

*Millea v. Metro-North R.R. Co.,*
   658 F.3d 154 (2d Cir. 2011) .................................................................................................. 3

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
   711 F.2d 1136 (2d Cir. 1983) ................................................................................................ 6

*Perdue v. Kenny A. ex. rel. Winn,*
   599 U.S. 542 (2010) ............................................................................................................... 3

*Pino v. Locasio,*
   101 F.3d 235 (2d Cir. 1996) ................................................................................................ 10

*Polk v. New York State Department of Correctional Services,*
   722 F.2d 23 (2d Cir. 1983) .................................................................................................... 4

*Reiter v. Metropolitan Transp. Auth. of State of New York,*
   2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007) ...................................................................... 9

*Roberts v. City of New York,*
   2012 WL 5431034 (S.D.N.Y. Oct. 16, 2012) ....................................................................... 9

*Weingarten v. Optima Communication Sys., Inc.,*
   544 F.Supp.2d 193 (S.D.N.Y. 2008) ..................................................................................... 6

*Wong v. Hunda Glass Corp.,*
   2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010) ........................................................................ 9

**STATUTES**

42 U.S.C. § 1983 ............................................................................................................................ 1

42 U.S.C. § 1988 ............................................................................................................................ 3

## PRELIMINARY STATEMENT

Defendants, The Port Authority of New York and New Jersey (the "Port Authority"), Warren Norman and Anthony Young (collectively "Defendants"), submit this memorandum of law in opposition to plaintiff's application for attorneys' fees and costs, because the hours for which plaintiff seeks compensation are excessive and plaintiff had limited success at trial.

## STATEMENT OF RELEVANT HISTORY AND FACTS

Plaintiff, a man who was arrested on January 25, 2011 and charged with trespassing at the Port Authority Bus Terminal, on April 19, 2012 commenced an action against the Port Authority, claiming that he had been falsely arrested and that his civil rights under 42 U.S.C. § 1983 had otherwise been violated.[1] On May 8, 2012, plaintiff filed an affidavit of service on the Port Authority.[2] Thereafter, on May 17, 2012 I, Karla Denalli, filed a Notice of Appearance on behalf of the Port Authority.[3] And on May 18, 2012, a Stipulation and Order extending the Port Authority's time to answer the complaint was entered.[4] The Port Authority's answer was filed on June 25, 2012, and on August 13, 2012, plaintiff's counsel Gabriel Harvis filed a Notice of Appearance.[5] There was no initial pretrial conference, because on August 21, 2012, the Court "so-ordered" the parties' proposed case management plan.[6]

On August 1, 2013, the Court granted plaintiff's request for an extension of the time to submit the joint pretrial order and certain other required pretrial submissions to September 20, 2013.[7] And on the requested date, those items were submitted by the parties.[8] Thereafter, on

---

[1] Denalli Dec., Ex. A, Entry # 1; on October 12, 2012, plaintiff filed a First Amended Complaint naming Police Officers Norman and Young (Denalli Dec., Ex. A, Entry #8).
[2] Denalli Dec., Ex. A, Entry # 2.
[3] Denalli Dec., Ex. A, Entry # 3.
[4] Denalli Dec., Ex. A, Entry # 4.
[5] Denalli Dec., Ex. A, Entries # 5 and # 6.
[6] Denalli Dec., Ex. A, Entry # 7.
[7] Denalli Dec., Ex. A, Entry # 15.

October 18, 2013, the Court held a final pretrial conference and the trial date was set as October 28, 2013.[9] However, due to scheduling conflicts involving another trial over which the Court was presiding, the trial commenced on November 4, 2013 and ended on November 6, 2013 when the jury rendered its verdict.[10] Shortly before the original trial date, Notices of Appearance were filed for the first time, by Baree N. Fett and Christopher D. Wright.[11] At the trial's end, the jury found no liability on the part of Police Officer Young, and found liability on the part of Police Officer Norman, only as two of the four claims presented to the jury for determination.[12] The jury awarded plaintiff $10,001.00, of which $1.00 was compensatory damages. The Judgment was entered on November 13, 2013,[13] and on December 19, 2013, the judgment amount was transmitted to plaintiff's counsel and was received by his office the following day.[14] On December 31, 2013, a Satisfaction of Judgment was requested of and transmitted to plaintiff's counsel, however as of the date of the filing of their opposition, Defendants have not received any response to the request or noted any action about it on the docket.[15]

Plaintiffs now seek to recover attorneys' fees at a rate of $350 per hour for Mr. Harvis, Ms. Fett and Mr. Wright. The work hours claimed are 262.1 by Mr. Harvis; 65.8 by Ms. Fett; and 65 hours by Mr. Wright. It is maintained that they each actually worked an additional 48.5, 48.4 and 35.9 hours, respectively, but that those hours are being waived. Thus, the total compensation plaintiff's counsel seeks is $137,515.00.

---

[8] Denalli Dec., Ex. A, Entries # 16-22.
[9] Denalli Dec., Ex. A, Entry # 23.
[10] Denalli Dec., Ex. C, pp. 366-68.
[11] Denalli Dec., Ex. A, Entries # 31 and 32.
[12] Denalli Dec., Ex. B, p. 366. No claims were presented to the jury as to the Port Authority or the "Doe" defendants, as there was no factual or legal basis to support any claims against the Port Authority and the "Doe" defendants were never identified by plaintiff.
[13] Denalli Dec., Ex. A, Entry # 41 and Ex. D.
[14] Denalli Dec., Exs. E and F.
[15] Denalli Dec., Exs. G and A.

# ARGUMENT

## POINT I

### THE ATTORNEY FEES SOUGHT ARE EXCESSIVE AND SHOULD BE REDUCED IN ACCORDANCE WITH THE APPLICABLE LEGAL STANDARD

A.  **Applicable legal standard**

Among the remedies the federal civil rights statutes provide are, the ability to recoup litigation costs and reasonable attorney fees.[16]  District courts are permitted "considerable discretion in determining what constitutes reasonable attorney's fees in a given case."[17]  Both the Supreme Court and the Second Circuit have held that in determining what represents a reasonable attorney fee, courts must calculate the "lodestar" figure.[18]  The lodestar figure is computed by multiplying a reasonable hourly rate by the number of reasonably expended hours.[19]

However, the Second Circuit has noted that the traditional lodestar's "value as a metaphor has deteriorated to the point of unhelpfulness,"[20] and has held that the better course for the district court is to bear in mind that the reasonable hourly rate is the rate a paying client would be willing to pay.  And in determining what rate a paying client would be willing to pay, the district court should consider, among other, the factors set forth in *Johnson v. Ga. Highway*

---

[16] *See* 42 U.S.C. § 1988.
[17] *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 151 (2d Cir.2008).
[18] *See Perdue v. Kenny A. ex. rel. Winn*, 599 U.S. 542, 551-52 (2010); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).
[19] *See Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center*, 652 F.3d 277, 289 (2d Cir. 2011).
[20] *Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

*Exp., Inc.*, while keeping in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.[21]

The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstance; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases.[22] It should be noted that many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate.[23] Thus, in this Circuit, "a reasonable hourly rate is the 'prevailing market rate,' i.e., the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[24] The "relevant community" is the district where the district court sits.[25] The burden rests with the party seeking fees "to justify the reasonableness of the requested rate."[26]

**B.    The hours for which plaintiff seeks compensation are excessive**

1. <u>Hours sought by Attorneys Fett and Wright</u>

In this case, plaintiff seeks to recover compensation for the two attorneys who first filed appearances in this case shortly before the scheduled trial start date. Given the straightforward, garden-variety false arrest case that this was, Defendants submit that Fett and Wright should not

---

[21] *Id.* at 190. While the *Perdue* opinion seems to cast doubt on the viability of *Arbor Hill*, it has not been overruled.
[22] *See Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).
[23] *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).
[24] *See Farbotko v. Clinton County of New York*, 433 F.3d 204, 208 (2d Cir. 2005).
[25] *See Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).
[26] *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11. (1984).

4

be awarded attorney's fees because they did not need to participate in the trial of this action, and their last minute appearances were nothing more than an attempt to inflate attorney fees in this case if such were to be awarded. Additionally, the hours they claimed to have worked and the work produced, given their stated experience, does not justify payment for the hours they are said to have expended.

"[A] court should reduce the award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the work produced."[27] Here, Attorneys Fett and Wright seek reimbursement for a total of 130.8 hours, 65.8 and 65 hours respectively. Attorney Fett is said to have worked on pre-trial submissions along with Attorney Harvis, as well as the examinations of the plaintiff and a non-party witness at trial.[28] Attorney Wright's work was for examination of Police Officer Norman and the summation.[29] The claimed hours for this work are grossly unreasonable, particularly given the declared experience of Attorney Fett and Wright. According to Fett, she has been admitted to practice law in this State and District since 1999, thus of the three attorneys, she has the most years of experience. And according to her Declaration, she has extensive experience handling civil rights litigation. Mr. Wright has been admitted to practice law in this State since 2000 and in this District since 2008. He too claims vast experience, principally in the litigation of criminal actions.

Given their level of experience and the uncomplicated nature of this case, the hours for which they seek reimbursement are excessive. Experienced attorneys like Fett and Wright should be able to spend less time on work than less experienced attorneys, yet they claim to have spent the equivalent of more than three 40 hour work weeks, doing work that included assisting

---

[27] *E.S. v. Katonah-Lewisboro School Dist.*, 796 F.Supp.2d 421, 431 (S.D.N.Y. 2011).
[28] Fett Dec., ¶¶ 12 and 15.
[29] Wright Dec., ¶ 15.

5

Harvis and preparing for the courtroom examination of witnesses whose testimony was neither involved nor lengthy, excepting Police Officer Norman was on the stand the longest, and that was mainly because Wright's examination of him became repetitive.[30] Accordingly, Defendants submit that Fett and Wright's hours are "outside of the range for similar matters litigated by counsel of similar experience."[31] And this Court in its discretion, should decline to compensate the hours spent by them based on the Court's assessment of what is appropriate for the scope and complexity of this litigation.[32]

2. <u>Hours sought by Attorney Harvis</u>

The 262.1 hours for which Attorney Harvis seeks reimbursement are equally excessive. This case did not involve any complex issues of law or fact. The first amended complaint alleged five claims—unlawful stop and search, false arrest, denial of constitutional right to a fair trial, unreasonable force and failure to intervene, all in violation of federal law.[33] And the source of the claims was the events surrounding plaintiff's arrest on January 25, 2011. There was a limited amount of document discovery conducted and/or exchanged by plaintiff.[34] The depositions in this case constituted the bulk of work done apart from trial, and even so, they totaled 11.05 hours, with the longest being 3 hours and 48 minutes.[35] And as the Court is aware, the trial herein was started and completed in three days, during which there were breaks related to another case over which the Court was presiding and there was a jury deliberating.

---

[30] *See, e.g.*, Denalli Dec., Ex. C, pp. 115, 140, 164, 166 and 168.
[31] *Weingarten v. Optima Communication Sys., Inc.*, 544 F.Supp.2d 193 (S.D.N.Y. 2008).
[32] *New York State Ass'n for Retarded Children, Inc. v Carey*, 711 F.2d 1136, 1146-48 (2d Cir. 1983).
[33] Denalli Dec., Ex. B.
[34] It consisted of a two-page Automatice Disclosure, and plaintiff's First Set of Interrogatories and Requests for Production of Documents, dated September 19, 2012; plaintiff's responses and objections to defendants' first set of interrogatories and document requests, dated November 26, 2013; four Notices of Deposition and a Notice of Entry Upon Land, dated January 16, 2013; and thereafter a response dated April 5, 2013, to defendants second document requests.
[35] Denalli Dec., Ex. H.

6

Additionally, the hours for the period March 23, 2011 to April 16, 2012, for work prior to the filing of the complaint herein, should be disallowed.[36]

Furthermore, the Court should not overlook Attorney Harvis' lack of candor, when he claims that he fully engaged in efforts to settle the litigation generally, as well as his attempts to negotiate the attorney fees.[37] Indeed, Attorney Harvis seeks to give the impression that he was forced to litigate this case in the district court, because Defendants were some intransigent foes; this is simply inaccurate. What Attorney Harvis fails to share with the Court is that the focus of the conversation that occurred in June 2012, specifically June 26, 2012, was that he was intending to email me a link that he said contained the video footage that was utilized at trial. While he did send an Email,[38] it did not contain the promised link. After conducting some research, Defendants' copy of the footage was located and viewed by me.[39] I called Attorney Harvis back at 3:07 p.m., and left him a voice-mail message. I have no record of receiving a call back on that day.

The next record this office has of receiving a telephone call from Attorney Harvis, is in mid to late November. During that conversation, his "negotiation tact" was to remind me that he used to work for the City of New York and that when the City had cases involving videotape, it would settle the case. I pointed out to him the differences between the City and the Port Authority, including the size of their police departments, and also mentioned to him that with the exception of the documents that Defendants had exchanged to that time, and the videotape,

---

[36] Harvis Dec., Ex. 4.
[37] Harvis Dec. ¶¶ 31 and 33.
[38] A practice that he was informed attorneys in this office were not permitted to engage in (except for limited purposes, such as collaboration on pretrial submissions such as joint pretrial orders), due to this office's technological and administrative constraints. Mr. Harvis disregarded this request, particularly starting in November 2012.
[39] The footage was turned over to plaintiff by the Port Authority during the underlying criminal proceeding.

7

which did not appear to irrefutably support plaintiff's claims there had been no other discovery. Thus, talk of settlement was premature, based on my experience of the Port Authority's general approach to litigation involving the quality of evidence in this case. Afterward, Attorney Harvis' manner when dealing with me was decidedly impolite, until about April 2013. Thereafter, Attorney Harvis did not raise the topic.

As for the issue of attorney fees, the billing records included in plaintiff's submission is not what was represented to Defendants as the billing and costs incurred by them in this case. On November 20, 2013, Attorney Harvis telephoned me and Emailed billing records.[40] According to him, 650 to 700 hours of work was done on this case, and the billing rate for him, Attorney Fett and Attorney Wright was $425 per hour. He also stated that plaintiff's costs were $6,300.00. In a subsequent phone call, I confirmed with Attorney Harvis that I had understood him correctly when he had said that his firm had expended 650 to 700 hours of work on this case. Thus, it was clear that plaintiff was seeking to be reimbursed in the range of $828,750 to $892,500, or $276,250 to $297,500, depending upon how one calculated the overall hourly rate. After client consultation, I informed Attorney Harvis that based on prior experience, the reimbursement amounts sought were excessive. He asked for examples, and I gave him at least two, one of which involved an attorney with more experience in police litigation than he and his partners combined, with a similar trial result. Thereafter, Attorney Harvis informed me that he had overestimated the hours worked, and that the actual hours were more in the range of 500. After additional client consultation, I spoke with Attorney Harvis on December 4, 2013. The offer extended to him at that time was $30,000.00 plus the $6,300.00 in costs originally quoted, for the reasons that had been previously expressed to him. For plaintiff to modify their billing records so drastically, and then accuse Defendants of unreasonableness with regard to resolving

---

[40] Denalli Dec., Ex. H.

8

this issue is highly disingenuous and should not be countenanced by the Court. Based on all of the foregoing, Defendants submit that Attorney Harvis' billable hours should be reduced.

3. <u>Other factors</u>

In support of the claimed reasonableness of the requested hourly rates, plaintiff also submits for the Court's consideration a 2011 National Law Journal billing survey of nationwide law firm billing rates (the "NLJ Survey"), and the Laffey Matrix. In Defendants' view, these items are of limited value to the Court in setting a reasonable rate of compensation in this case. First, the Matrix is a methodology for setting and adjusting hourly rates for civil attorneys practicing in the Washington D.C. area.[41] And aside from referencing the Matrix, plaintiff does not explain why the Court should rely upon it in determining the reasonableness of the requested fee. Second, the NLJ Survey is based on a survey of the nation's largest law firms, and therefore it is not indicative of reasonable rates charged in the Southern District of New York by a three-practitioner law firm without the overhead of the country's largest law firms. As the attorneys admit, their's is a three-attorney practice, and such practitioners rarely command the fees of partners in large law firms. Defendants do not argue that the Court should automatically reduce the hourly rate requested by plaintiff on this basis alone. Rather, this fact is relevant to defining the market. Thus, Defendants submits it would be appropriate for the Court to be guided by hourly rates awarded to attorneys in small practices with Attorney Harvis' years of experience.[42]

---

[41] Harvis Dec., Exs. 7 and 8.
[42] The following are a few examples of recent awards to solo/small civil rights practitioners: *Roberts v. City of New York*, 2012 WL 5431034, at *6 (S.D.N.Y. Oct. 16, 2012); *Wong v. Hunda Glass Corp.*, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (finding that "the range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 and $350 per hour"); *Reiter v. Metropolitan Transp. Auth. of State of New York*, 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) ("The Court notes that a recent survey of case law found that within the last five years,

## POINT II

### THE FEE REQUESTED SHOULD BE REDUCED COMMENSURATE WITH PLAINTIFF'S LIMITED SUCCESS

As a general matter, a civil rights plaintiff who has some measure of success, qualifies as a prevailing party.[43] However, "[t]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."[44] Furthermore, a nominal damages award, may justify a low fee allowance or even no fee at all, particularly where the recovery of damages is the purpose of the litigation,[45] as it was here. And while it is the case that a fee may not be reduced merely because it "would be disproportionate to the financial interest at stake in the litigation,"[46] the Supreme Court has made clear that "where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."[47] Moreover, the Second Circuit has adopted the view that "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below [the presumptively reasonable fee] by reason of the [plaintiff's] 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory."[48]

In this case, plaintiff did not prevail against Police Officer Young at all, and prevailed against Police Officer Norman on only two claims. And he was awarded $1.00 compensatory

---

courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district." (Internal quotation marks and citation omitted)).
[43] *Farrar v. Hobby*, 506 U.S. 103 (1992).
[44] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Barfield*, 537 F.3d at 152; *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005).
[45] *Farrar*, 506 U.S. 103 (1992); *Pino v. Locascio*, 101 F.3d 235 (2d Cir. 1996).
[46] *Kassim*, 415 F.3d at 252.
[47] *Farrar*, 506 U.S. at 114 (citation omitted).
[48] *Kassim*, 415 F.3d at 256.

damages, and merely $10,000.00 punitive damages. Thus, a reduction in the fees requested by plaintiff is appropriate.[49]

As the Supreme Court has noted "[t]he product of reasonable hours times a reasonable rate does not end the inquiry."[50] A district court may take into account other considerations to adjust the fee downward, including the essential factor of the results obtained.[51] Plaintiff did not achieve the level of success that he and his attorney anticipated, and the Court should take this into consideration in determining the attorney fee award herein.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Court should reduce the plaintiff's attorney fee and costs application to an amount the Court deems proper.

Dated: New York, New York
       January 14, 2014

                               Respectfully submitted,

                               JAMES M. BEGLEY, ESQ.
                               *Attorney for Defendant*
                               The Port Authority of New York and New Jersey, Police Officer Warren Norman and Police Officer Anthony Young

                               By:  */s/ Karla Denalli*
                                    Karla Denalli (KD-8253)
                                    225 Park Avenue South, 13th Floor
                                    New York, New York 10003
                                    (212) 435-3436

---

[49] *Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992).
[50] *Hensley*, 461 U.S. at 434.
[51] *Id.*