UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TYSON LUCAS,

        Plaintiff,

    -against-                                     12 CV 3096 (CM)

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, et al.,

        Defendants.
------------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW

## IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS


**HARVIS WRIGHT & FETT LLP**
305 Broadway, 14th Floor
New York, New York 10007

*Attorneys for Plaintiff*

January 27, 2014

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

PLAINTIFF'S DEGREE OF SUCCESS ....................................................................................... 2

THE HOURS EXPENDED WERE REASONABLE ................................................................... 4

THE REQUESTED RATES ARE REASONABLE ..................................................................... 7

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Case**                                                                                           **Pages**

*Anderson v. City of New York*, 132 F.Supp.2d 239 (S.D.N.Y. 2001) .................................................. 2

*Barbour v. City of White Plains*, 700 F.3d 631 (2d Cir. 2012) ........................................................... 2

*Barbour v. City of White Plains*, 07-CV-3014 (RPP), 2013 WL 5526234 (S.D.N.Y. Oct. 7, 2013) ............ 7

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) .............................................................. 3

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ......................................................................... 2,5

*Copeland v. Marshall*, 641 F.2d 880 (1980) (*en banc*) .................................................................... 5

*D.J. ex rel. Roberts v. City of New York*, 11-CV-5458 (JGK) (DF), 2012 WL 5431034 (S.D.N.Y. Oct. 16, 2012) ........................................................................................................................... 8

*De Alvarez v. City of New York*, 10-CV-4434 (SJ) (LB), 2012 WL 2087761 (E.D.N.Y. May 16, 2012) ................................................................................................................................... 8

*Equal Employment Opportunity Commission v. Sage Realty Corp.*, 521 F.Supp. 263 (S.D.N.Y. 1981) ............ 7

*Farrar v. Hobby*, 506 U.S. 103 (1992) ........................................................................................... 2

*Finch v. New York State Office of Children and Family Services*, 861 F.Supp.2d 145 (S.D.N.Y. 2012) ....................................................................................................................................... 7

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992) ............................................................................... 4

*Harrell v. Van Der Plas*, 08-CV-8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) .................... 4

*Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) ......................................................... 3,5

*Kesselhaut v. United States*, 555 F. 2d 791 (Ct. Cl. 1977) ............................................................... 7

*Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996) ................................................................................ 3

*Lee v. McCue*, 04-CV-6077 (CM), 2007 WL 2230100 (S.D.N.Y. July 25, 2007) ............................. 3,6

*Luca v. County of Nassau*, 698 F.Supp.2d 296 (E.D.N.Y. 2010) ...................................................... 8

*McDonald ex rel. Prendergast Pension Plan of the NYSA–ILA Pension*, 450 F.3d 91 (2d Cir. 2006) ............. 7

*Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011) ......................................................... 3

*Morris v. Eversley*, 343 F.Supp.2d 234 (S.D.N.Y. 2004) ................................................................ 2

*Pino v. Locascio*, 101 F.3d 235 (2d Cir. 1996) .............................................................................. 2

**Case** **Pages**

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir. 1996) ............................................................... 4

*Reiter v. Metro. Transp. Auth. of State of New York*, 01-CV-2762 (GWG), 2007 WL 2775144
   (S.D.N.Y. Sept. 25, 2007) ................................................................................................................ 8

*Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) ..................................... 8

*Simmons v. New York City Trans. Auth.*, 575 F.3d 170 (2d Cir. 2009) ............................................ 8

*Wise v. Kelly,* 620 F.Supp.2d 435 (S.D.N.Y. 2008) ....................................................................... 8

*Wong v. Hunda Glass Corp.*, 09-CV-4402 (RLE), 2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010) ............... 8

**PRELIMINARY STATEMENT**

Plaintiff Tyson Lucas submits this Reply Memorandum of Law in further support of his application for costs and reasonable attorneys' fees as a prevailing party in this § 1983 litigation. Plaintiff has established that his trial victory entitles him to attorneys' fees and expenses and that the amount requested is reasonable. Defendants, in their Memorandum in Opposition ("Def. Mem."), dated January 20, 2014, advance frivolous arguments that do not address the principles of law governing Mr. Lucas' application. Defendants do not challenge the legitimacy of any specific legal task undertaken by plaintiff's counsel (all non-legal tasks have been waived), nor do they question the accuracy of counsel's billing records or counsel's ability, experience or reputation. Instead, defendants oppose plaintiff's motion on the flawed grounds that a $10,001 jury verdict in a § 1983 civil rights case is, in and of itself, insufficient to warrant a "lodestar" fee award. Defendants then argue that the case was overstaffed, even though plaintiff has effectively sought compensation for the work of one attorney only, and no support staff.

Defendants also ignore that their "no pay" position drove the costs of this litigation. Despite their efforts to convince the Court otherwise, defendants do not and cannot deny that they refused to make an offer of settlement or undertake settlement discussions, even though plaintiff made early, repeated and documented efforts to settle. Defendants saw the video, met Tyson Lucas and Warren Norman, and decided they would fight to the bitter end. That was no doubt their choice to make. But losing and being cast with reasonable attorneys' fees was the risk in that gamble, as Congress intended.

Submitted herewith is a Reply Declaration of Gabriel Harvis with time records covering work performed from the date of filing of the initial fee application through the filing of this Reply. Plaintiff's total application for all fees and expenses to date is $143,872.31, as set forth in detail in the Conclusion to this Reply Memorandum of Law.

## PLAINTIFF'S DEGREE OF SUCCESS

Defendants argue that the Court should depart from the lodestar because, in obtaining a jury award of $10,001, plaintiff "did not achieve the level of success that he and his attorney anticipated." Def. Mem. at 11.  It is unclear how defendants have gauged plaintiff or his counsel's expectations or tabulated the "amount sought," inasmuch as defendants never engaged in settlement discussions and plaintiff's counsel never mentioned a dollar amount in the Complaint or to the jury.  Moreover, in advancing their "limited success" argument, the defendants misleadingly cite cases in which *only* nominal damages of $1 were awarded, without addressing the $10,000 punitive damages award obtained by plaintiff in this case.  *See* Def. Mem. at 11 (citing *Farrar v. Hobby*, 506 U.S. 103 (1992) and *Pino v. Locascio*, 101 F.3d 235 (2d Cir. 1996)).  To apply *Farrar* in this context, as defendants appear to urge, represents an abject misstatement of the applicable law.  *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); *Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012).

Make no mistake, the $10,001 in damages awarded to Mr. Lucas is a meaningful sum to him. As important, defendants ignore the moral victory inherent in the jury's siding with Mr. Lucas on his principal claims of false arrest and excessive force and, in the process, rejecting the testimony of two law enforcement officers and a non-party witness.  *See Morris v. Eversley*, 343 F.Supp.2d 234, 248 (S.D.N.Y. 2004) (Chin, J.) (although jury awarded plaintiff only $1,000 in compensatory damages for Eighth Amendment violation, "notwithstanding the amounts of the damages awarded, Morris and the Milbank lawyers still obtained a significant victory, one that undoubtedly will help to protect the civil rights of others'"); *Anderson v. City of New York*, 132 F.Supp.2d 239, 242-43 (S.D.N.Y. 2001) (recovery of $2,500 in compensatory damages on excessive force claim was not technical or de

minimus, even though complaint sought $66 million); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("[Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements.") (emphasis added). This Court has noted as much in *Lee v. McCue*, 04-CV-6077, 2007 WL 2230100, *7 (S.D.N.Y. July 25, 2007) (in awarding attorneys' fees on nominal damages, noting that "despite the lack of a compensatory damages award," plaintiff had "achieved a meaningful victory on a significant constitutional claim");

> As the Second Circuit recently explained:
>
>> While a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely. Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.

*Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (citation omitted, emphasis in original).

In awarding punitive damages, notwithstanding plaintiff's admitted lack of physical injuries, the jury acted to punish Officer Norman for his unlawful conduct and to deter future repetition of such conduct. *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 568 (1996); *accord Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996) ("[V]iolations of civil rights may very well be 'particularly egregious' acts that result in only 'a small amount of economic damages' or injuries whose monetary value is 'difficult to determine.'") (citation omitted). By any measure, plaintiff and his counsel were extremely pleased at the outcome of the case.

Finally, defendants also argue that Mr. Lucas' award should be reduced further because the jury did not find in his favor on his sole claim against Anthony Young, or his fabrication of evidence claim against Warren Norman.  Def. Mem. at 10-11.  However, all of plaintiff's claims involved a "common core of facts" – *i.e.*, plaintiff's arrest by these officers on January 25, 2011.  The same time would necessarily have been devoted to the matter whether or not those two claims were pursued; the same witnesses would have been deposed and examined at trial, including Young; and the same paper discovery conducted.  As such, "there were no unrelated claims to which step one of the *Hensley* analysis might be applied," *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992), and no reduction in the fee is warranted on that basis.  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996).

## THE HOURS EXPENDED WERE REASONABLE

"In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Harrell v. Van Der Plas*, 08-CV-8252 (GEL), 2009 WL 3756327, *16 (S.D.N.Y. Nov. 9, 2009) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  Here, defendants do not identify a single time entry that is vague, block-billed, duplicative, wasteful or otherwise improper.  Def. Mem., *generally*.  Rather, they advance the puzzling argument that plaintiff's use of three attorneys at trial was "nothing more than an attempt to inflate attorney fees." Def. Mem. at 5.  The opposite is true.

Defendants are well aware, and Mr. Lucas clarifies below, that plaintiff has *from the outset* waived a significant portion of attorney time actually and legitimately spent on the matter (approximately 25%) in the interest of first reaching a settlement of the fees and, when that did not happen, presenting a reasonable application to this Court.  Plaintiff essentially billed for one

attorney's time and no travel or administrative work, with two attorneys and a paralegal volunteering on the case. There is simply no reason to penalize plaintiff for time given away by his counsel.

Furthermore, defendants are responsible for the vast majority of the hours for which plaintiff now seeks attorneys' fees, as they steadfastly refused to engage in settlement discussions or to ever make an offer of any kind from commencement of the litigation through the conclusion of the trial. As the Supreme Court stated in *City of Riverside*,

> petitioners could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner…"The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Copeland v. Marshall*, 205 U. S. App. D.C. 390, 414, 641 F.2d 880, 904 (1980) (*en banc*).

477 U.S. at 580 n.11. Plaintiff made repeated efforts to engage in good-faith settlement discussion, which defendants incorrectly recount. Def. Mem. at 7-8. In reality, plaintiff's entreaties regarding settlement were shut down by Ms. Denalli, who dismissively stated that the Port Authority does not settle "these kinds of cases." What is beyond dispute and conceded in defendants' opposition papers is that defendants *never made a single offer of settlement*. "[I]n litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel…It is therefore difficult to generalize about the appropriate size of the fee in relation to the amount in controversy." *Kassim*, 415 F.3d at 252.

Similarly, several pages of defendants' brief are devoted to plaintiff's counsel's alleged scheme to "drastically modify billing records" and somehow obtain $892,500 in attorneys' fees. Def. Mem. at 7-9. This is an utter fabrication and frankly confusing.

In truth, Ms. Denalli expressed concern shortly after trial that Port Authority policies required Warren Norman to personally pay the punitive damages award upon entry of judgment. In an effort to avoid this outcome, and before the hours had been reviewed or a bill prepared, plaintiff's counsel conveyed a preliminary "ballpark" estimate of 650-700 hours (equaling at most

$297,500 at counsel's currently quoted hourly rate of $425, not $892,500 as defendants suggest). It was understood that this was an estimate pending review of the billing and that the precise amounts were unknown. In typical fashion, defendants simply never responded, even to tell plaintiff no offer would be forthcoming.

Plaintiff's counsel then forwarded a bill (the same bill that was attached to plaintiff's moving papers as Exhibits 2, 3 and 4 to the Wright, Fett and Harvis Declarations, respectively), reflecting the approximately 500 hours that were expended on the litigation, with voluntary waiver of all overlapping attorney time (a reduction of approximately 100 hours). Plaintiff's counsel stated in no uncertain terms that the reduced amount was subject to further negotiation and it was counsel's sincere hope that the parties could find common ground and settle the fees. Over two weeks later (and after the Court encouraged settlement in a memo-endorsement), defendants made their sole, non-negotiable offer of $30,000 plus costs (the first and last settlement offer of the case). The offer represented approximately 1/6 of the already reduced bill. To justify defendants' refusal to negotiate (or make a reasonable offer), defense counsel vaguely referred to cases with low attorneys' fees from many years ago (the names of which have never been revealed) and this Court's decision in *Lee v. McCue* (awarding $35,000 in fees – more than defendants' offer – to a plaintiff who obtained *only* nominal damages almost seven years ago).

The facts are clear: no billing records were ever modified in this case – drastically or otherwise. The Court should not accept defendants' efforts to distort the record in an attempt to avoid the blame (and cost) for their "no pay" litigation strategy.

In sum, plaintiff's counsel devoted a reasonable amount of time to this case and maintained detailed contemporaneous records. Plaintiff has voluntarily waived the time attributable to additional attorneys and support staff. Moreover, defendants are uniquely – in every sense –

responsible for the cost of this litigation, as it could have been settled all along. Accordingly, plaintiff respectfully requests that the Court decline to reduce the hours requested by plaintiff.

## THE REQUESTED RATES ARE REASONABLE

Defendants' argument against plaintiff's counsel's proposed hourly rate of $350 for each partner is made in passing and somewhat half-heartedly. Citing unsupportive and outdated authority, defendants argue that plaintiff's proposed rate is out of line with recent awards in this district to comparably experienced civil rights litigators from small firms. This is simply wrong. Plaintiff's proposed rate is in the mid-range of awards to similarly experienced counsel in this district and far from the highest. *See, e.g., Barbour v. City of White Plains*, 07-CV-3014 (RPP), 2013 WL 5526234, *10 (S.D.N.Y. Oct. 7, 2013) (awarding fees to an experienced sole practitioner: "The Court finds that a $625 per hour rate is within the range of hourly rates of civil rights attorneys in the Southern District of New York."); *Finch v. New York State Office of Children and Family Services,* 861 F.Supp.2d 145, 154 (S.D.N.Y. 2012) (awarding an experienced civil rights attorney who was a member of a small law firm an hourly rate of $450 per hour); *see also McDonald ex rel. Prendergast Pension Plan of the NYSA–ILA Pension,* 450 F.3d 91, 97 n.6 (2d Cir. 2006) ("Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower rate.").

The three attorneys appearing for plaintiff have collectively appeared in over 500 § 1983 civil rights actions in the Southern and Eastern Districts of New York, representing both plaintiffs and government defendants in cases small and large. *See Kesselhaut v. United States*, 555 F. 2d 791, 793 (Ct. Cl. 1977) ("Attorneys having both private and Government experience are often better qualified to be of value to courts, as their officers, and to their clients, public and private, than those having one or the other experience alone."); *Equal Employment Opportunity Commission v. Sage Realty Corp.*, 521 F.Supp. 263, 269 (S.D.N.Y. 1981) ("Experience includes not only the number of years of practice but also the nature of the practice engaged in."). They brought that experience to bear in this case,

overcoming a determined adversary to achieve a successful outcome for Mr. Lucas. As such, they are entitled to the rates of counsel with similarly specialized experience. Notably, Mr. Harvis, who has been practicing the fewest years, has previously been awarded as much as $300 per hour in the Eastern District of New York, where rates are universally recognized as lower. *See, e.g.*, *Simmons v. New York City Trans. Auth.*, 575 F.3d 170, 172, 174 (2d Cir. 2009); *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 300-01 (E.D.N.Y. 2010).

Indeed, the cases cited by defendants fully support plaintiff's proposed rate. In *Roberts v. City of New York*, the court awarded plaintiff's proposed hourly rate of $350 to counsel with comparable experience. *D.J. ex rel. Roberts v. City of New York*, 11-CV-5458 (JGK) (DF), 2012 WL 5431034, *6 (S.D.N.Y. Oct. 16, 2012) *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (citing *Wise v. Kelly,* 620 F.Supp.2d 435, 443-47 (S.D.N.Y. 2008) and *De Alvarez v. City of New York,* 10-CV-4434 (SJ) (LB), 2012 WL 2087761, *2 (E.D.N.Y. May 16, 2012)). In *Wong v. Hunda Glass Corp.*, a pre-*Perdue* decision over three years old, the court also awarded $350 per hour to plaintiff's counsel of similar experience in a similarly straightforward case. 09-CV-4402 (RLE), 2010 WL 3452417, *3 (S.D.N.Y. Sept. 1, 2010). Even the six-year-old case of *Reiter v. Metro. Transp. Auth. of State of New York* – the only other case cited by defendants – also supports plaintiff's request; the court in that case awarded plaintiff's counsel with *little or no prior experience in civil litigation* $275 per hour, describing that rate as the "far lower end of the scale" for reasonable hourly rates in the district at that time (for legal work done over a decade ago). 01-CV-2762 (GWG), 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007).

Accordingly, plaintiff respectfully requests that the Court award attorneys' fees at his proposed $350 hourly rate.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in his initial fee application, plaintiff respectfully requests that this Honorable Court award a total of $143,872.31 as attorneys' fees and costs to the plaintiff as a prevailing party in this litigation, in the following amounts:

a. Attorney's Fees to Gabriel P. Harvis at the rate of $350 per hour for 262.1 of the hours spent on this litigation through the date of plaintiff's December 23, 2013 fee application, for a total of $91,735.00;

b. Attorney's Fees to Christopher D. Wright at the rate of $350 per hour for 65 of the hours spent on this litigation through the date of plaintiff's December 23, 2013 fee application, for a total of $22,750.00;

c. Attorney's Fees to Baree N. Fett at the rate of $350 per hour for 65.8 of the hours spent on this litigation through the date of plaintiff's December 23, 2013 fee application, for a total of $23,030.00;

d. Reasonable costs and expenses in the amount of $2,437.31;

e. Attorney's Fees to Gabriel P. Harvis at the rate of $350 per hour for 11.2 hours expended from the date of the initial fee application through this Reply, for a total of $3,920.00; and

f. Such other costs and expenses as may be incurred hereafter.

Dated: New York, New York
        January 27, 2014

Respectfully submitted,

_____
Gabriel P. Harvis
Harvis Wright & Fett LLP
305 Broadway, 14th Floor
New York, NY 10007
(212) 323-6880

*Attorneys for Plaintiff*